*Annie M. Head v. Abram M. Chesbrough.

CONVEYANCE·OF LAND ADJOINING A NAVIGABLE RIVER. .

Where one conveys land adjoining a navigable river of this state and the land in fact bounds and abuts upon the water which flows in front of the premises and conveys by a conveyance which does not except or reserve the land in front of the premises, although they may be marked with boundary lines, the grantee takes to the centre of the navigable stream, that is to the centre of the current.

APPEAL.

KING, J.

This case was brought in the common pleas by the plaintiff, to quiet title to certain premises which she avers the defendant is claiming; it was tried in the common pleas and appealed to this court.

The premises in controversy, as alleged in the petition, is a certain tract of land which she avers lies between lots eleven and twelve of the subdivision of lots twelve, thirteen, fourteen and fifteen of Ironville, constituting the village of Ironville,—lying between those subdivided lots and the centre of the channel of the Maumee River, and the claim is based upon a survey and plat of the village of Ironville, made by David Weaver, in 1870; Weaver being then the owner of the original lots Nos. twelve, thirteen, fourteen and fifteen in the Wa-sa-on Renau and Cheno tract, in Manhattan. That map purports to divide parts of these lots which I have named into small lots; and among the small lots are lots numbers eleven and twelve. The lots appear on the Weaver map to come substantially to the water's edge, as it stood in 1870, or as the map illustrates it; but, drawn along the shore of the water, and near it, was a line which it is claimed by the plaintiff marked out the boundary of lots on that side, or end, and it is claimed that the map shows that although those lines are angling lines, running a short distance in one direction and then changing direction and running again a short distance on a straight line and then again changing direction,—that each of the angles was marked by posts and that the line itself on the map was shown to have certain angles—which are given; and if that be so, it appears in the original map, which is before us—then those courses are somewhat oblique. The record, and this map, for it was, shortly after its execution, recorded,—show some courses on that line, but they do not show that there were boundary-stakes set at those angles. Whether that line was intended to be a boundary of these lots, or not, and without deciding whether it was the original intention of Mr. Weaver to make that the boundary, it appears plainly, from the map that that angling line is coincident with the water as it then appeared or as his surveyor represented it upon his map; and we think it appears from this map alone to have been intended simply as a survey of that end of the lot, placing the line as near the water's edge as it was convenient for the surveyer to go. But the determination of that question is not, in our judgment, essential to the determination of the rights of the parties. Mr. Weaver had claims against him and gave mortgages upon some portions of his land, and

*For decision of the common pleas, which is affirmed by this decision, see 6 S. & C. P. (17), 494.

conveyed other portions of it, and some of it was sold at sheriff's sale, and these lots, eleven and twelve, which are owned by the defendant,Chesbrough, became, by a conveyance to the plaintiff, the property of the plaintiff—before 1885, but in 1885, the plaintiff being then.the owner of lots eleven and twelve, conveyed them to A. Bridge, and plaintiff now claims that she is the owner of the land and the sole owner of the water in the river between those lots and the channel. Being the owner of lots eleven and twelve, she conveys them to one A. Bridge, by a deed which describes them as lots·eleven and twelve on this plat. In 1895, Bridge conveyed these lots by the same description, to the defendant, but with also an additional description, by which he undertook to convey all the riparian rights and water privileges that might exist upon them or be annexed to them. There is no dispute upon the testimony here that the water had then either risen, or had washed away the soil, so that it covered a large portion of lots eleven and twelve as originally shown upon the Weaver map—especially lot twelve, which perhaps was at least one-third of it under water—and a good portion of lot eleven was also under water at the time when she conveyed to Mr. Bridge, and this condition of things existed at the time when Bridge conveyed to the defendant; so that when the defendant purchased, as well as when Bridge purchased of the plaintiff, these lots ran to the water—and the water covered a part of the premises.

It is also in evidence that when Mr. Bridge purchased these lots and the plaintiff purchased of Bridge, these lots, because of their water privileges, he paid a very much larger price—several times as large a price as these lots would have been worth at any time.

We think the law is well settled that when one party conveys land adjoining a navigable river of the state of Ohio, and the land in fact bounds and abuts upon the water which flows in front of the premises and conveys by a conveyance which does not except or reserve the land in front of the premises, although they may be marked with boundary lines, that the grantee takes to the centre of the navigable stream—to the centre of the current; and it is useless and the time of the court will not allow us to cite authorities upon that question.

The only case we need to refer is a recent one of the supreme court in 53 O. S., 254, and I will only read a few lines in that decision.

The court, after describing the grant—which was to a boundary line fixed by the deed, and which boundary line was in the water—say, on page 266 :

" These considerations would seem to justify the presumption that a grant of this character is to the central thread of the stream unless apt terms are employed to limit it.

" And such appears to be the settled view of the courts of the country. (Citing many other cases.)

" To the application of this doctrine it is quite immaterial whether the stream be named as a boundary of the lands granted or there be a description by courses and distances from a fixed monument whereby a line is established coincident with the stream. The doctrine regards the substance of the grant and not its form."

That, we think, is sufficient law to cite upon·this question, and that the substance of this grant made by the plaintiff herself, in 1885, conveyed this land and all its rights and privileges to the·water and soil in

Dec. 12

front of these lots, though it may have been described by actual boundaries—to the centre of the stream in front of the premises.

Therefore the order and judgment will be that the petition in this case be dismissed, and the defendant will recover his costs of the plaintiff.

*King & Tracy*, Attorneys for Plaintiff.
*Clayton W. Everett*, Attorney for Defendant.